IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. S1-4:22-CR-00690-MTS-1 |
| | ) | |
| DONALD EUGENE FIELDS II, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES Defendant Donald Eugene Fields II, by and through counsel, Assistant Federal Public Defender Mohammed G. Ahmed, hereby submitting this sentencing memorandum in accordance with Section 3553(a) of Title 18, the federal statute that guides a sentencing court's imposition of sentence and directs the court to consider the defendants' history and characteristics along with the nature and circumstances of the offense.

Donald Eugene Fields II (hereinafter "Donald"), was born into a simple blue-collar family in Elizabethtown, Kentucky in 1964. At three, his family moved to rural Franklin County, Missouri. As working folks, Donald's family did not see much use in education. His father was a concrete finisher and part-time preacher. He passed away from brain cancer right before Donald turned seven years old. Donald recalls very few memories of his father other than when he was sick in the hospital. Donald's mother is still alive, but she has been very ill lately, and she is unfortunately near the end of her line. After Donald's father's death, his mother

went on to remarry Chester Wilson Sr. Donald remembers coming home from his father's funeral to Wilson sitting on his porch with a bag. He lived with the family from that day until his death.

Wilson did not drink often but when he did, he was an abusive, violent drunk. Once or twice a year he would binge drink and disappear for weeks. On the occasions where he got drunk but stayed, he would be so violent and abusive, Donald wished he would disappear. Donald recalls incidents such as one occasion where Wilson got drunk and stuck a shotgun in his mother's mouth. He also recalls Wilson getting drunk and so irate when Donald borrowed his mom's car as a teenager that he chased Donald and shot at him and a friend.

For reasons no one including Donald can explain to the undersigned, Donald's mother took him out of school either before or at the beginning of the eighth grade with the intention of moving. But the family never did move, and no one thought to reenroll Donald in school. So, Donald dropped out and went to work in a neighbor's farm, baling hay and completing other normal farming chores. He began learning a host of other blue-collar types of work like working on cars, carpentry, and general labor. He also learned that life was just about getting by. He had no goals in life, no aspirations. His focus was simply making it through to the next day and doing what he had to do to fit in.

And Donald is someone that can fit in anywhere. Donald is in the custody of the United States Marshals at the Sainte Genevieve County Jail where he has

2

earned the position of trustee. As the name suggests, it is a position of trust and an earned privilege. A jail inmate trustee is a low-risk offender who has displayed such exemplary behavior that he is allowed certain privileges like use of phones, separate living quarters, and so on in exchange for performing a number of duties without pay such as mopping floors, doing laundry, painting, taking out the trash, and unloading trucks, for example. Sainte Genevieve County Jail only allows three inmates to serve as a trustee at any one time.

The statute of conviction here provides for a ten-year mandatory minimum. Thus, the people of the United States have sent the message that Donald's conduct is deserving of at least 10 years of imprisonment. Ten years—one decade—is a significant amount of time. Especially for a man of Donald's age and health. Donald has a history of multiple health conditions including benign prostatic hypertrophy and hyperplasia (BPH), renal cysts, type II diabetes, high cholesterol, high blood pressure, GERD, restless leg syndrome, arthritis, hyperlipidemia, chronic obstructive sleep apnea, myocardial infarction and neuropathy. He has also been diagnosed with anxiety.  Donald is currently prescribed Alfuzosin and Finasteride (for BPH), Omeprazole (for GERD), and Rosuvastatin (for high cholesterol). While in the custody of the USM he has been treated at St. Genevieve County Memorial Hospital for a cystoscopy procedure related to his BPH. He was also diagnosed with microhematuria, or blood in his urine, during this time. Donald has also been seen by St. Genevieve Orthopedics relating to a previous shoulder injury and resulting

3

surgery and St. Gen Vision Care regarding blurry vision possibly related to his diabetes. He has been referred to an ophthalmologist for cataract extraction.

Donald will be in his seventies when released from federal custody. Some key findings from the United States Sentencing Commission demonstrate that men of around Donald's age do not generally reoffend. For example, the Commission found that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." Elsewhere, the Commission found for offenders around the age of 60 have very low re-arrest rates. *See* "THE EFFECTS OF AGING ON RECIDIVISM AMONGST FEDERAL OFFENDERS," United States Sentencing Commission, 2017 at p. 3 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf). More specifically, for first-time sex offenders with a median age of 68—people squarely like Donald—one study found the recidivism rate was around only one percent. *See* Elias Ghossoub and Rita Khoury, CHARACTERISTICS OF OLDER ADULT FIRST-TIME SEX OFFENDERS: INSIGHTS FROM THE MISSOURI REGISTRY, The American Journal of Geriatric Psychiatry, Volume 29, Issue 3, 2021, pages 230-238, available at https://www.sciencedirect.com/science/article/pii/S1064748120303894. Also, this crime involved Donald victimizing a stepchild. It is statistically unlikely Donald—released in his seventies—will be in a position to reoffend. And in any event, as evidenced by his time incarcerated by Sainte Genevieve, Donald will acclimate himself well to supervised release if he lives to see a release date.

4

Donald's co-defendant, Ted Sartori, received a ten-year sentence and avoided a conviction under 18 U.S.C. § 1591. Sartori admitted guilt under 18 U.S.C. §2423(b) by knowingly travelling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor. He did not take responsibility for his own conduct; choosing instead to blame Donald at sentencing.

Ten-year sentences are the average sentence imposed for these types of offenses and similarly situated offenders. Judiciary Sentencing Information ("JSIN" data) provided by the United States Sentencing Commission provides that "[d]uring the last five fiscal years (FY2021-2025),… [for] the defendants whose primary guideline was §2G1.3, with a Final Offense Level of 33 and a Criminal History Category of I, the average length of imprisonment imposed was 123 month(s) and the median length of imprisonment imposed was 120 month(s). *See* Exhibit A attached, Judiciary Sentencing Information.

*Commentary on the PSR and Specific Offender Characteristics*

Donald concedes there is no legal basis to object to the inclusion of the specific characteristic enhancements found at United States Sentencing Guideline §2G1.3(b)(1), (2) and (4). Nevertheless, Donald asks this Honorable Court to find that a sentence at the low end of the guideline is appropriate to account for the duplicative and superfluous nature of these enhancements as applied here.

Guideline §2G1.3(b)(1) adds two levels if the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the

5

custody, care, or supervisory control of the defendant.  Obviously, Donald was the step-father of the victim and this enhancement should apply. However, §2G1.3(b)(2) applies if the defendant unduly influenced a minor to engage in prohibited sexual conduct. These separate enhancements apply to Donald because of the same status—he only was able to exert influence because he was the victim's step-father. Thus, these enhancements as applied to Donald's conduct vis-à-vis the victim, are duplicative and target the same status.

Guideline §2G1.3(b)(4)(A) increases the guideline level by two if the offense involved sex or sexual contact. The offense is called sex trafficking. The base offense level is thirty. Of course, the offense involved sexual activity by its very nature, as evidenced by the name of the offense.  To increase the penalty for sex trafficking by two levels because the offense involved sex is superfluous and arbitrary.

### Conclusion

Finally, Donald wishes to express to the Court his regret for his conduct and not diminish the harm he caused the victim. His objection to the PSR is not borne out of any sort of avoidance of acceptance of responsibility. Rather it is based upon a disagreement with the legal applicability of the proposed enhancement on the one hand and based on the fact that he still has a pending state case comprising conduct that is not relevant conduct to this case on the other hand. Donald does not dispute any facts that establish the elements of the offense of conviction here.

6

For all the reasons stated above, Donald Eugene Fields II stands before this Honorable Court accepting responsibility for his conduct in this case and requesting a sentence toward the lower end of the applicable guideline range of 133 months to 168 months. Again, he is sorry for the harm he has caused.

Dated July 1, 2026.

Respectfully submitted,

/s/ Mohammed G. Ahmed
MOHAMMED G. AHMED
Bar. No.  6285612 IL
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Mohammed_Ahmed@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Dianna R. Edwards, Assistant United States Attorney.

/s/ Mohammed G. Ahmed
MOHAMMED G. AHMED

7

# EXHIBIT A

**FEDERAL DEFENDANTS IN SELECTED CELL**

During the last five fiscal years (FY2021-2025), there were 25 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 33 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 25 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 123 month(s) and the median length of imprisonment imposed was 120 month(s).

The sentencing data provided does not reflect the Commission's recommendation regarding the appropriate sentence to be imposed or represent the Commission's official position on any issue or case. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

If the court does consider the above sentencing information as part of its consideration of the factors in 18 U.S.C. § 3553(a) in imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

### Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell
Fiscal Year 2021-2025

■ Within Range   ■ Downward Departure or Variance   ■ Upward Departure or Variance   ■ §5K1.1 Substantial Assistance



**Note:** The figure includes the 30 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 33 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

### Sentence Type for Defendants in Selected Cell (after excluding §5K1.1)
Fiscal Year 2021-2025

■ Defendants Receiving Imprisonment (In Whole or In Part)   ■ Defendants Receiving Probation or Fine Only



**Note:** The figure includes the 25 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 33 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Total percentages displayed in the figure may not sum to 100% due to rounding.

The *Defendants Receiving Imprisonment* category includes defendants sentenced to a term of imprisonment (in whole or in part) and who received a commitment to the Bureau of Prisons. This category includes (1) defendants sentenced to a term of imprisonment only, with no additional conditions of community confinement, home detention or intermittent confinement (Prison Only) and (2) defendants sentenced to imprisonment and conditions of alternative confinement as defined in USSG §5C1.1 (Prison and Alternatives). This category includes, but is not limited to, Zone A, Zone B, or Zone C cases receiving prison with additional conditions of a term of community confinement, home detention, or intermittent confinement.

The *Defendants Receiving Probation* category includes defendants sentenced to a term of probation with or without a condition of community confinement, intermittent confinement, or home detention (Probation Only and Probation and Alternatives). This category also includes defendants who received no prison, no probation, and no time of alternative confinement as defined in USSG §5C1.1, but instead who received a fine and/or a special assessment (Fine Only).

### Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)
Fiscal Year 2021-2025

■ Average Length of Imprisonment   ■ Median Length of Imprisonment



**Note:** The figure includes the 25 defendants reported to the Commission (1) whose primary guideline was §2G1.3, with a Final Offense Level of 33 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

*Average and Median Length of Imprisonment* reports the average and median term of imprisonment imposed in months for cases in which a term of imprisonment was imposed. Probation sentences are excluded. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also excluded. Cases in which a sentence is imposed, but where the length is indeterminable, are excluded. When sentences are expressed as "time served" on the J&C, Commission staff uses the dates in federal custody to determine the length of time served when an defendant has been in custody the entire time. If the defendant has been in and out of custody, or the start date is unclear/missing, then the Commission assigns a value of one day as a minimal time served amount for these cases. In cases where the court imposes a sentence of life imprisonment, sentences are reported as 470 months, a length consistent with the average life expectancy of federal criminal defendants given the average age of federal defendants. Sentences of greater than 470 months are also reported as 470 months.